IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:15cv958-WC |
| | ) | |
| $7,050.00 IN UNITED STATES | ) | |
| CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the Motion to Dismiss for Lack of Subject Matter Jurisdiction over the Defendant *Res* (Doc. 9) filed by Claimant, Erica Gaston, in this civil *in rem* forfeiture action.  The United States has filed a response (Doc. 11) in opposition to the motion to dismiss.  For the reasons that follow, Claimant's motion will be denied.

## I.    BACKGROUND

On December 30, 2015, pursuant to 21 U.S.C. § 881(a)(6), the United States filed its Verified Complaint for Forfeiture *In Rem* (Doc. 1) of the Defendant $7,050.00 in United States currency seized on May 20, 2015, during the search of a residence in Montgomery, Alabama.  On January 5, 2016, the Clerk's Office issued the warrant of arrest *in rem* (Doc. 3).  On February 8, 2016, Erica Gaston filed her claim (Doc. 8) asserting that she is the rightful owner of the Defendant currency.  Then, on February 11, 2016, Claimant filed the instant motion to dismiss.  On March 11, 2016, the United States filed its response in opposition to the motion to dismiss.  On April 4, 2016, Claimant filed

additional evidentiary support for her motion.  *See* Notice (Doc. 13).  Finally, on April 7, 2016, Claimant filed her reply (Doc. 16) to the United States' Response.

## II.      JURISDICTION AND VENUE

Although Claimant predicates her motion on Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the complaint should be dismissed because the court lacks subject matter jurisdiction, it is evident that her actual contention is that the court lacks *in rem* jurisdiction, in that the court lacks jurisdiction over the *res*, the Defendant currency. As such, her motion is more akin to a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  *See, e.g., Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255-56 (4th Cir. 2002) (remarking, "in rem jurisdiction concerns a court's authority over the res . . . personal jurisdiction, rather than subject-matter jurisdiction, seems far more analogous to in rem jurisdiction."); Order (Doc. 20) at 1 n.1, *United States v. $96,370.00*, 3:14-cv-356-WHA (entered Oct. 15, 2014).  The court will address below Claimant's argument that the court lacks *in rem* jurisdiction over the Defendant currency. It is sufficed for present purposes to note that, plainly, the court has subject matter jurisdiction over a civil complaint brought by the United States for forfeiture *in rem* pursuant to 28 U.S.C. §§ 1345 and 1355, and 21 U.S.C. § 881, and that venue is appropriate in this District pursuant to 28 U.S.C. §§ 1355 and 1395.

## III.     STANDARD OF REVIEW

In general, when a court's jurisdiction is challenged pursuant to Rule 12(b)(2), the party asserting jurisdiction has the burden to prove that jurisdiction exists.  *See, e.g., Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).  Courts

have generally employed a burden shifting framework to resolve arguments concerning a

court's jurisdiction over a person or, as in this case, property:

> The most common formulation found in the judicial opinions is that the
> plaintiff bears the ultimate burden of demonstrating that the court's
> personal jurisdiction over the defendants exists by a preponderance of the
> evidence, but needs only make a prima facie showing when the district
> judge restricts her review of the Rule 12(b)(2) motion solely to affidavits
> and other written evidence. . . .   In addition, for purposes of such a review,
> federal courts will, as they do on other motions under rule 12(b), take as
> true the allegations of the nonmoving party with regard to the jurisdictional
> issues and resolve all factual disputes in his or her favor.

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed.

2016) (footnotes omitted).  *See also Am. Home Assur. Co. v. Weaver Aggregate Transp.,*

*Inc.*, 719 F. Supp. 2d 1333, 1334 (M.D. Ala. 2010).  Moreover, and importantly, the court

enjoys substantial latitude in devising how best to resolve the jurisdictional inquiry within

the procedural framework discussed previously:

> When a federal court is considering a challenge to its jurisdiction over a
> defendant or over some form of property, the district judge has considerable
> procedural leeway in choosing a methodology for deciding the motion.  The
> court may receive and weigh the contents of affidavits and any other
> relevant matter submitted by the parties to assist it in determining the
> jurisdictional facts.

Wright & Miller, *supra*, § 1351 (footnotes omitted).

## IV.   DISCUSSION

### A.   Factual Findings Related to Jurisdiction Over the *Res*[1]

---

[1]   In making the following factual determinations, the court draws upon both the submissions of
the parties and publicly available documents submitted in the course of ongoing parallel
litigation in the state court which thus far have not been incorporated into the record of this case
by the parties.  *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006)
(citations omitted) ("A district court may take judicial notice of certain facts without converting a

On May 18, 2015, Special Agent Bruce Little of the Alabama Bureau of Investigation submitted an Affidavit In Support Of Application For Search Warrant to the Honorable J.R. Gaines, a Circuit Judge in Alabama's Fifteenth Judicial Circuit, which serves Montgomery County, Alabama. *See* Ex. 1 to Cl.'s Mot. Dis. (Doc. 9-1). As sworn in the affidavit, Special Agent Little is a "Task Force Officer (TFO) for the [federal] Drug Enforcement Administration (DEA)." *Id.* The affidavit described an ongoing investigation of the distribution of marijuana and synthetic marijuana from an address located in Montgomery, pursuant to which "Agents from the Alabama State Bureau of Investigation (SBI), Detectives from the Montgomery, Alabama, Police Department and members of the DEA Task Force utilized a Confidential Source (CS) to conduct a purchase of synthetic marijuana 'Spice'" at the subject residence. *Id.* Based on the information that he had obtained from this investigation, Special Agent Little averred that he had "probable cause to believe[] and do[es] believe that controlled substances, to-wit, Marijuana, synthetic marijuana 'Spice', drug related paraphernalia and other [contraband] . . . are being kept or stored upon the aforesaid residence and are subject to seizure under the laws of the State of Alabama." *Id.* Hence, while Special Agent Little described an ongoing joint state and federal investigation, and specifically identified himself as a member of a DEA task force, he requested the warrant under the authority of Alabama

motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may consider."). Indeed, it is Claimant who first introduced some documents from the parallel state court litigation and asserted that such documents are relevant to this court's jurisdictional inquiry. *See* Ex. A to Cl.'s Notice of Submission of Evidence (Doc. 13) (consisting of one page of a state court order in which the state court appears to rule that the state court, not this federal court, may exercise *in rem* jurisdiction over the Defendant currency).

law and, indeed, under his signature indicated his position as a "Special Agent" with the "State Bureau of Investigations." *Id.*

Judge Gaines issued a "No Knock" warrant directed toward "ANY SHERIFF, DEPUTY, AND/OR MUNICIPAL OFFICER OR DULY SWORN LAW ENFORCEMENT OFFICER OF THE STATE" on May 18, 2015. *Id.* The warrant was issued "in the name of the People of the State of Alabama," and commanded the executing law enforcement officer to "make due return of this warrant and an inventory of all property seized there under [sic] before [Judge Gaines] within 10 days as required by law." *Id.* Notably, apart from requiring a return of the warrant along with an inventory of seized property, the warrant did not impose any particular requirement concerning the continuing custody of the seized property. Among the items specifically included as subject to seizure by the warrant were "Unites [sic] States currency" and "[a]ny and all other evidence of violations of Federal and State drug laws." *Id.*

On May 20, 2015, Special Agent Little proceeded to execute the warrant along with federal DEA Agents Whittle and Spivey and members of the Montgomery Police Department SWAT unit. Affidavit of Bruce Little at ¶ 2 (Doc. 41), *Gaston v. Little*, No.:03-cv-2015-000369 (Cir. Ct. Mont. Cty., filed June 9, 2016). The Defendant currency was located in a black Taurus pistol box in a back bedroom at the residence. *Id.* at ¶ 5. It, along with other currency found at the residence, "was sealed in DEA self-sealing evidence envelopes at the scene and was immediately taken into DEA custody by [Agent Little] as a DEA TFO." *Id.* at ¶ 9. The Defendant currency was transported by Agent Little to a bank and counted. *Id.* at ¶ 12. Agent Little did not seek to initiate state

forfeiture proceedings, and did not even request federal "adoption"[2] of the Defendant currency, because it was "taken into DEA custody at the scene of the search warrant, sealed in DEA evidence envelopes and transported to the DEA Montgomery Resident Office [by Agent Little] in [his] capacity as a DEA Task Force Officer." *Id.* at ¶ 15.[3]  In other words, notwithstanding the state court's grant of authority to seize the currency under Alabama law, Agent Little seized the currency on behalf of the DEA and delivered it to the custody of the DEA at its Montgomery Resident Office.

On May 26, 2015, Agent Little completed a DEA Seizure/FIRE form, "a document used by the DEA for memorializing a seizure it makes and is filled out any time a DEA agent seizes property of any sort."  Amended Affidavit of Bruce Little at ¶ 13 (Doc. 45), *Gaston v. Little*, No.:03-cv-2015-000369 (Cir. Ct. Mont. Cty., filed June 14, 2016).   The Seizure/FIRE form includes a DEA case number, lists DEA Agent

---

[2]   The Alabama Court of Civil Appeals aptly described federal adoptive forfeiture as follows:

> The adoptive-seizure process begins when state or local authorities seize property as part of a criminal investigation or arrest. Generally, the state or local officials either make a determination that forfeiture is not possible under state law or conclude that it is advantageous to them to transfer the matter to federal authorities for a federal administrative forfeiture proceeding. Once state or local officials have determined that an adoptive seizure is advantageous, they file a request with federal authorities. The appropriate federal agency then decides whether to accept or reject the request. If the adoptive-seizure request is accepted, the property is taken into the custody of federal agents and federal administrative forfeiture proceedings begin. At the successful conclusion of those proceedings, usually 80% of the forfeited property is given back to the state or local agency.

*Green v. City of Montgomery*, 55 So.3d 256, 258 (Ala. Civ. App. 2009) (citations omitted).

[3]   Other currency seized by Agent Little, consisting of $3,300.00 found inside a clear plastic bag in Claimant's bedroom, was returned to Claimant at the DEA Montgomery Resident Office on June 11, 2015. *Id.* at ¶ 12.

Spivey as the Case Agent, indicates that the Defendant currency is subject to "Administrative" forfeiture, and indicates that, as of the date the report was completed, the Defendant currency was stored at the DEA's facility in Montgomery. *See* Def.'s Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 31), *Gaston v. Little*, No.:03-cv-2015-000369 (Cir. Ct. Mont. Cty., filed May 24, 2016).

On June 10, 2015, Claimant filed a pleading in the Circuit Court of Montgomery County, Alabama, naming Agent Little as a defendant and titled "Complaint and Motion to Return Seized Property or in the alternative, Motion for Expidited [sic] Probable Cause Hearing." Complaint (Doc. 1), *Gaston v. Little*, No.:03-cv-2015-000369 (Cir. Ct. Mont. Cty., filed June 10, 2015); Ex. B to Cl.'s Mot. to Dis. (Doc. 9-2). In the state court pleading, Claimant alleges that Agent Little wrongfully seized about $21,000.00 in currency from Claimant, that Agent Little lacked probable cause to seize such currency, that the currency is the proceeds of a personal injury settlement obtained by Claimant, and that Claimant is an innocent owner of the currency. *Id.* In the state court pleading, Plaintiff seeks restoration of her currency "plus costs." *Id.* There is no separate allegation of wrongdoing by Agent Little, and no claim for damages.[4]

---

[4]   The Circuit Court recently rejected Agent Little's argument that he seized the Defendant currency as a federal agent, and that, accordingly, this court has custody of the currency and exclusive jurisdiction over the *res*:

> However, Little's own affidavit in support of the state court search warrant that was used to seize Gaston's currency clearly establishes that Little was acting as a state law enforcement agent—not a federal agent—when he secured this Court's process to seize Gaston's currency. Because Little was acting as a state law enforcement agent using the authority of the state court when he seized the currency, it is the state court that acquired possession or jurisdiction or custody over the currency. Any further possession of the currency by other federal agents

### B.    Claimant's Argument

Claimant submits that this court lacks jurisdiction over the Defendant currency because it was seized pursuant to process issued by the state court and, consequently, it "is in the possession and under the jurisdiction and control of the court that issued the process."  Cl.'s Mot. (Doc. 9) at 2-3 (citations omitted).  Claimant maintains that, once the Defendant currency was within the jurisdiction of the state court because it was seized via state-court issued process, it was "withdrawn from federal jurisdiction."  *Id.* at 3-4 (citations omitted).  Claimant asserts that, by virtue of its having issued the search warrant, "possession by the state court occurred *before* federal agents took the property from the custody of the Montgomery County, Alabama District Court and Montgomery County, Alabama Circuit Court, and *before* this Court issued its warrant of arrest *in rem.*"  *Id.* at 5.

In response to the Government's argument that both Alabama state courts and federal courts in Alabama have held that property is not brought within an Alabama state court's exclusive control or jurisdiction merely because the state court has issued process which caused it to be seized, Claimant maintains that the state court possessed the

<div style="margin-left:2em">

did not destroy or abrogate the previously acquired jurisdiction of this court. Furthermore, because this court acquired both possession and jurisdiction over the currency first by seizing the property with its own process, according to federal law, the currency was withdrawn from federal jurisdiction thereby preventing federal jurisdiction from attaching.

</div>

Final Order at 1-2 (Doc. 49), *Gaston v. Little*, No.:03-cv-2015-000369 (Cir. Ct. Mont. Cty., filed June 28, 2016) (citations omitted).  Having reached this conclusion, the Circuit Court further held that, because the State did not initiate forfeiture proceedings in the intervening period since the seizure of the Defendant currency, Claimant "is entitled to the return of her currency."  *Id.* at 2.  The Circuit Court's ruling is being appealed by Agent Little.  *See* Notice of Appeal (Doc. 51), *Gaston v. Little*, No.:03-cv-2015-000369 (Cir. Ct. Mont. Cty., filed July 28, 2016).

Defendant currency, to the exclusion of any other court, the moment it was seized pursuant to that court's process.  Cl.'s Reply (Doc. 16) at 2.  Claimant further asserts that, notwithstanding the rulings of Alabama's intermediate appellate courts, Alabama statutory law directs that property seized pursuant to a state warrant is "under the control of the court that issued the warrant, or the court in which the offense is triable in respect to which the property was seized."  *Id.* at 4 (citing Ala. Code § 15-5-14).  Lastly, Claimant argues that, to the extent more recent decisions of the intermediate appellate courts of Alabama might be read as conflicting with her arguments about Alabama law, such decisions must "yield to decisions by the Alabama Supreme Court" which Claimant has cited in her filings.  *Id.* at 6.

### C.    Analysis

Claimant is correct that a "state court and a federal court cannot simultaneously exercise *in rem* jurisdiction over the same property."  *United States v. $270,000.00 in U.S. Currency, Plus Interest*, 1 F.3d 1146, 1147 (11th Cir. 1993).  Hence, if Claimant's argument is correct that the state court assumed exclusive *in rem* jurisdiction over the Defendant currency at the time it was seized, and that such jurisdiction was never relinquished, then this court lacks jurisdiction over the *res*.  However, Claimant's argument has been submitted numerous times previously and has largely failed to gain traction in Alabama's state or federal courts.  This is so because, notwithstanding several archaic cases cited by Claimant, Alabama's courts have more recently, and consistently, interpreted the applicable Alabama laws as requiring a two-step process in order for an Alabama court to obtain *in rem* jurisdiction over seized property: possession of the *res*

and the filing of an *in rem* action concerning the property in the state court. *See Green*, 55 So.3d at 260; *see also Ruiz v. City of Montgomery*, ＿ So.3d ＿, 2015 WL 5918728, at *4 (Ala. Ct. Civ. App. Oct. 9, 2015). The practical effect of this "two-step" process is that exclusive *in rem* jurisdiction over property seized pursuant to Alabama law does not automatically vest in a state court without the filing of an action *in rem* concerning the seized property. Thus, as has been recognized repeatedly in state and federal cases in this area, state authorities are permitted by Alabama law to turn over property seized pursuant to state law to federal authorities for purposes of federal forfeiture proceedings so long as no state *in rem* proceeding has been initiated.

The court need not here recapitulate the full reasoning of the many state and federal cases which have recognized and applied the "two-step" inquiry articulated in *Green*. It is sufficed to say that a central tenet of *Green*—that Alabama's law governing disposition of seized property, Ala. Code § 20-2-93, "neither expressly nor impliedly prohibits a state or local law enforcement agency from transferring seized property to federal authorities"—has been recognized and permitted to stand repeatedly by the Alabama Supreme Court. Indeed, Alabama's Chief Justice recently acknowledged that this is an issue of "first impression" which the Alabama Supreme Court should consider. *See Ex parte Bennett*, 164 So.3d 1162, 1163-64 (Ala. 2014) (Moore, C.J., dissenting from denial of certiorari). However, insofar as the Alabama Supreme Court has declined to speak on this issue, this court will continue to rely upon the decisions of Alabama's intermediate appellate courts in which this two-step process has consistently been

applied.  *See, e.g.,* Order (Doc. 25) at 5-6, *United States v. $96,370.00 in United States Currency*, No. 3:14-cv-356-WHA (M.D. Ala. Nov. 12, 2014)

To the extent Claimant argues that this case is deserving of a different outcome because the Defendant currency was seized pursuant to a state court search warrant, rather than incident to an arrest, this court has previously rejected such argument.  *See* Order (Doc. 38) at 7-9, *United States v. $6,676.00 in United States Currency, et al.*, No. 1:08-cv-026-WKW-TFM (M.D. Ala. Mar. 11, 2014), *aff'd,* 599 F. App'x 865, (11th Cir. 2014).  Likewise, this court's sister court in the Northern District of Alabama has reached a similar result.  *See United States v. $178,858.00 in United States Currency*, No. 2:06-cv-1651-RDP, 2013 WL 5524699, at *3-*5 (N.D. Ala. Oct. 3, 2013), *aff'd,* 569 F. App'x 649 (11th Cir. 2014).  This court discerns no reason to depart from the reasoning of those cases in this matter.  Moreover, the relevant statute concerning disposition of property seized under Alabama law makes no distinction in the permissible disposition of the property whether "[t]he seizure is incident to an arrest or a search under a search warrant[.]"  § 20-2-93(b)(1).  That is, regardless of whether property is seized pursuant to a search warrant or not, it still must be validly seized pursuant to Alabama law, and, in any event, Alabama's courts have thus far held that the law governing disposition of such property does not automatically vest *in rem* jurisdiction over the property in a state court and, furthermore, does not require intervention of a state court to permit state authorities to deliver the property to federal authorities for purposes of federal forfeiture proceedings.

To be sure, as argued by Claimant, a separate provision of Alabama law, Ala. Code § 15-5-14, appears to require that property seized pursuant to a state court search warrant "be delivered to the court issuing the warrant" and held in the "possession" of the "officer effecting the warrant[,] . . . subject to the order of the court to which he is required to return the proceedings or of the court in which the offense is triable in respect to which the property was taken."  However, this statutory provision has nothing to do with disposition of seized property by forfeiture under Alabama law, and does not address a situation, like the instant case, where there is a competing federal claim for jurisdiction.  *See, e.g.,* Order (Doc. 25) at 3-5, *United States v. $96, 370*, No. 3:14-cv-356-WHA (distinguishing Alabama cases finding *in rem* jurisdiction automatically vests because cases involved no federal participation in search or seizure of the subject property and, hence, no competing claim of federal jurisdiction).

To the extent that Alabama's statutes or case law interpreting the relevant Alabama statutes create a perceived inconsistency in their application with respect to items seized pursuant to a search warrant, Claimant has pointed the court to no Alabama case holding, in an analogous situation, that an Alabama state court is automatically vested with *in rem* jurisdiction over property seized pursuant to a search warrant despite a completing claim of federal court jurisdiction due to the involvement of federal agents in procuring the state warrant and executing the search, or that, absent federal involvement on the front-end, seized property may not be transferred to federal authorities without an

12

order from the state court that originally issued the warrant.[5]  Without some unequivocal

pronouncement of Alabama law in that vein, the court cannot conclude that *in rem*

jurisdiction vested automatically in the state court merely with the seizure of the

Defendant currency pursuant to a state court search warrant.[6]

In addition to her arguments about Alabama law, Claimant points to a number of

United States Supreme Court cases, all more than a hundred years old, in arguing that

federal law precludes this court from exercising *in rem* jurisdiction over the Defendant

currency because it was possessed by the state court that issued the warrant authorizing

its seizure at the moment it was seized.  Cl.'s Reply (Doc. 16) at 2-4 (citing *Palmer v.

State of Texas*, 212 U.S. 118 (1909); *The Rio Grande*, 90 U.S. 458 (1874); and *Taylor v.

Carryl*, 61 U.S. 583 (1857)).  However, none of the cases cited by Claimant are factually

analogous to the instant case—they do not involve property seized pursuant to state court

search warrants subject to a competing claim of jurisdiction asserted by a sovereign

whose agents participated in seizing the subject property—and none of them actually

hold that property seized during the execution of a state court search warrant is in the

---

[5]   The only case of which this court is aware that appears to have possibly reached such a conclusion, *Alexander v. City of Birmingham*, 99 So. 3d 1251, 1256-57 (Ala. Civ. App. 2012), was promptly reversed by the same court that issued it.  *See Payne v. City of Decatur*, 141 So. 3d 500, 504 (Ala. Civ. App. 2013).

[6]   Other federal courts, applying the laws of other states, have concluded that *in rem* jurisdiction does automatically vest, and that a "turnover order" is required to divest the state court of jurisdiction and permit a federal court to assert jurisdiction over property seized pursuant to state law.  *See, e.g., Scarabin v. D.E.A.*, 966 F.2d 989, 993 (5th Cir. 1992) (interpreting Louisiana law); *United States v. One 1979 Chevrolet C-20 Van*, 924 F.2d 120, 123 (7th Cir. 1991) (interpreting Illinois law); and *Martin v. Indiana State Police*, 537 F. Supp. 2d 974, 987 (S.D. Ind. 2008) (interpreting Indiana law).  However, as discussed above, and as recognized in *Green* and subsequent cases, Alabama courts thus far have not similarly construed Alabama's law to require such measures.

exclusive possession of the state court that issued the warrant.  Moreover, the Eleventh

Circuit has at least implicitly rejected this contention in *United States v. $270,000.00 in*

*United States Currency, Plus Interest, supra*.  In that case, the Circuit Court determined

that property seized pursuant to a search warrant issued by a Florida state court was

beyond a federal court's *in rem* jurisdiction at the time federal jurisdiction was asserted

because the state court had not entered a final order disposing of the property after state

*in rem* forfeiture proceedings had concluded.  1 F.3d at 1149.  In other words, the Florida

courts were vested with exclusive *in rem* jurisdiction not because the property was seized

pursuant to a state court warrant, but rather because Florida had initiated a prior *in rem*

proceeding and Florida law further required a state court order to be entered disposing of

the property after the conclusion of a state *in rem* proceeding concerning the *res*.

Obviously, the Circuit Court's analysis would have differed, and would have been

considerably streamlined, if the mere fact that the property had been seized pursuant to a

state court warrant precluded the federal court from asserting *in rem* jurisdiction pursuant

to federal law.

In sum, the balance of relevant authorities indicates that, under Alabama law as it

is interpreted at this time, Alabama's state courts are not automatically vested with

exclusive *in rem* jurisdiction over property seized pursuant to Alabama law, even where

the subject property is seized pursuant to a warrant issued by a state court.  Rather, *in rem*

jurisdiction attaches in the state court with control of the *res* at the time an action *in rem*

is initiated in the state court.  Accordingly, the undersigned will adhere to prior decisions

of this court upholding the federal court's assertion of jurisdiction, provided that, indeed,

the Defendant currency was under the control of federal agents at the time a state *in rem* proceeding was filed.

As discussed above, it is clear that, whether or not Agent Little seized the Defendant currency wearing the hat of a state law enforcement agent, a deputized federal agent, or some hybrid of the two, the Defendant currency was in the possession of the federal DEA at its Montgomery resident office at the time Claimant filed her state court action seeking a return of the property on June 10, 2015. Assuming the correctness of the observation in *Green*—which Plaintiff does not appear to contest—that "federal jurisdiction begins the moment the *res* is controlled by federal agents," *Green*, 55 So.3d at 263 (citing *United States v. $506,231 in United States Currency*, 125 F.3d 442 (7th Cir. 1997)), then it is evident that federal jurisdiction attached either when Agent Little seized the Defendant currency as a deputized federal agent or, failing that, when he delivered the Defendant currency to the DEA's custody at the Montgomery resident office where it remained until it was transferred to the custody of the United States Marshal. Either relevant event triggering federal control of the *res* and, hence, federal jurisdiction, occurred before Claimant initiated her *in rem* proceeding in the state court. As such, the federal court was vested with prior *in rem* jurisdiction over the Defendant currency, and, consequently, Claimant's motion to dismiss is due to be denied.

## V.    CONCLUSION

For all of the foregoing reasons, Claimant's Motion to Dismiss for Lack of Subject

Matter Jurisdiction (Doc. 9) is DENIED.[7]

Done this 10th day of August, 2016.


                                              /s/ Wallace Capel, Jr.
                                              UNITED STATES MAGISTRATE JUDGE

---

[7]    The court is not unmindful of the implications on comity of its ruling on the motion to dismiss.  Because of the rulings in the parallel state court litigation, there are now two courts asserting *in rem* jurisdiction over the Defendant currency.  Thus, this case appears to have landed at the precise juncture warned against in *Penn Gen. Cas. Co. v. Commonwealth*, 294 U.S. 189, 195 (1935) ("To avoid unseemly and disastrous conflicts in the administration of our dual judicial system, and to protect the judicial process of the court first assuming jurisdiction, the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other.").

Perhaps conflicts of this sort are made more likely in this age of increased cooperation and intermingling of state and federal law enforcement resources in joint investigative ventures. Perhaps Alabama's state courts will recognize this tension and will take the opportunity posed by the parallel litigation to finally clarify relevant Alabama law on this matter, as the Chief Justice of the Alabama Supreme Court has urged that body to do.  Perhaps state court judges, when confronted with search warrant applications authored by federally deputized state law enforcement officers describing joint federal and state investigations, will, if concerned about ensuring state court control of the disposition of property seized pursuant to the warrant, include more exacting language concerning the control and custody of the property seized in any warrants issued in order to more zealously protect the state court's jurisdiction.  But these are all hypotheticals which, even if they come to fruition, will do so too late to guide the disposition of the instant motion.  In the reality of this case, with the authorities that the court presently has before it, the court cannot conclude that the concern for comity alone, while significant, requires the court to decline to exercise *in rem* jurisdiction over property which has been under federal control and custody since it was seized by a deputized federal agent as part of a joint federal and state investigation.